CHARLES ENGELBRECHT, APPELLANT, v. E. A. ROWORTH, CHARLES SWARTHOUT, GEORGE A. McDONALD, HENRY BLOEMKE, JOHN DITZLER, DEFENDANTS, GEORGE A. McDONALD, RESPONDENT.—157 S. W. (2d) 242.

St. Louis Court of Appeals. Opinion filed January 6, 1942.

Motion for Rehearing Denied January 20, 1942.

*Albert E. Hausman* for appellant.

*George A. McDonald pro se.*

ANDERSON, J.—This is an action for false-arrest, brought against George A. McDonald, E. A. Roworth, and others. At the close of the whole case, the court directed a verdict in favor of all defendants except defendants McDonald and Roworth. The jury returned a verdict for defendant Roworth and against defendant McDonald for $1200 actual damages. On motion of defendant McDonald, the court set aside the verdict against McDonald, specifying as grounds for his action error in giving and reading to the jury plaintiff's instructions 2 and 3.

The petition alleged that on September 12, 1932, defendants wilfully, intentionally, wrongfully, and unlawfully caused a member of the police force to arrest the plaintiff and compel him to go with said police officer to the police station, and restrained plaintiff of his liberty for approximately one hour, all against his will, and without any warrant or process of law authorizing the making of said arrest or inflicting said imprisonment; that as a result plaintiff was greatly humiliated, shocked, and insulted, and caused great mental anguish and distress, and his good name and reputation were injured. The petition further alleged that said arrest was malicious. Actual and punitive damages were prayed. Defendant answered by a general denial.

The evidence bearing on the issues raised on this appeal was substantially as follows:

Charles Engelbrecht testified that on the night of September 12, 1932, he and his wife went to the Macon School Building to attend a meeting of the Central Twenty-fourth Ward Improvement Association, and as he entered the hall he met Mr. Swarthout, who said to him, "You are not a member." Plaintiff replied, "Yes, I am." Thereupon Swarthout said, "Let's see your membership card." Plaintiff showed Swarthout his membership card and then went into the hall, taking a seat in the rear. When the meeting opened, Mr.

Roworth, the president of the association, requested those who were not members to leave the room. Nobody left and Mr. Roworth said, ". . . Mr. and Mrs. Engelbrecht—will please leave the room." Plaintiff then got to his feet and announced that he had come to the meeting to find out why his membership was discontinued, and Roworth replied that he did not have to tell him. Plaintiff thereupon stated that he would not leave until he found out, or unless it was left to a vote of the people in the hall. Roworth replied that they did not have to do that.

Plaintiff further testified that defendant McDonald then said to Roworth, "Have them arrested; I will go down and press the charges." McDonald then went to the door and started talking to a police officer. Plaintiff got up to see what they were talking about, and the police officer asked him if he would go peaceably or if he should call the wagon. Plaintiff replied that it would not be necessary to call the wagon, that he would go down in his own machine, and that the officer could go with him. Swarthout then asked McDonald if he wanted him to go along, and McDonald replied, "No, I will handle it myself."

Plaintiff further testified that at the police station the desk sergeant asked what the trouble was, and the officer told him it was some little disturbance in a meeting. The sergeant then asked McDonald what he wanted to do about it, and McDonald replied, "I don't know whether to make it a disturbance of the peace charge, or make it hard for him and put a State charge, a misdemeanor charge against them." McDonald then said, "If he stays away from the meeting tonight, we won't put no charge; we will drop it." Plaintiff then agreed to stay away from the meeting and was released. After leaving the police station McDonald said to plaintiff, "You ought to be glad we got you out of there. We had it fixed to get you, to give you a trimming for yourself."

Mrs. Engelbrecht testified that she accompanied her husband to the meeting. When they arrived she heard Mr. Swarthout say to her husband, "Mr. Engelbrecht, you are no longer a member of this association." Her husband replied, "Oh, yes, I am." Swarthout then asked to see his membership card and her husband held out his card to him. She and her husband then went into the meeting place, taking seats in the rear of the hall. When Mr. Roworth called the meeting to order, he said, "All those that are not members please step out of the meeting room." No one left, and he made the announcement again, adding: "Mr. and Mrs. Engelbrecht will please leave the hall." Mr. Engelbrecht protested that he was a member, and Mr. Roworth said: "No, Mr. Engelbrecht, you are no longer a member." Her husband said: "That is what I came up to find out about." Then Roworth asked: "Didn't you receive a letter to that effect?" Plaintiff replied: "Yes, but I came up to find out why. That letter

didn't state why. I want to leave it to a vote of the people and let them decide what to do." Mr. Roworth then said: "I don't have to do that—We don't have to do that." To this her husband replied: "The only way you can get me out, then, is to take me out, or whatever you want to do."

Witness further testified that Mr. McDonald thereafter said: "The only thing to do is have him arrested." The policeman stepped inside the door, and McDonald said he would go down and press the charges. Her husband got up and approached the officer and the latter asked him whether he was ready and whether he would go peaceably. They then went to the police station.

The witness corroborated her husband's testimony as to what transpired at the police station.

Defendant McDonald, testifying in his own behalf, stated that at the beginning of the meeting Mr. Roworth announced that the meeting was a closed one for the purpose of electing officers, and Mr. Engelbrecht said, "Well, the only way to get me out is to throw me out." A police officer came in and said something to Engelbrecht, and then asked, "Will somebody go with me?" McDonald replied, "Yes, I will go with you and be a witness this man is disturbing the peace and is inciting a riot."

McDonald further testified, "So I decided the best thing to do—I had him arrested. So the officer asked for somebody to go along and I said, 'Yes,' I would go along. I took it upon myself to get Mr. Engelbrecht out of there; I took it upon myself to go with that police officer."

Further testifying defendant stated that when asked at the police station what the charge was, he replied, "Either peace disturbance or inciting a riot. You can make police court out of it or a misdemeanor. We don't want to prosecute this man. We don't want to prosecute him, but he is causing trouble. I wanted to get him out of there and if he promises to stay away from those meetings there will be nothing more to it."

On cross-examination defendant testified: "The officer asked some one to go along to prefer the charge, to get him out of there, and I volunteered to go absolutely to get him out of the building and prefer the charges, if there were any charges. I withdrew them afterwards. I went along to prefer them absolutely. It was at my request that the officer and this man went to the station."

Richard C. Ray, the police officer, testifying for plaintiff, stated that on the occasion in question he was in the hall of the building when someone came to him and told him there was a non-member in the meeting that they wanted out. He replied that they would have to bring this person to the door; that he would not go into their meeting place. When they came out in the hall they wanted the man arrested. Witness then said, "Well, who is going to prosecute him?" He

further testified, "Somebody spoke up, I couldn't say who it was, and said, 'I will go along.' I said, 'Well, let's go to the station and settle it.' I do not remember whether I called the wagon or went in their car to the station. I do not recall whether some one went to the station with us or met us there. There was a lady mixed up in it somehow. I can't say how. I remember when we came in the sergeant said, 'What have you got?' I said, 'Let them explain it.' I took no part in the explanation at all. I had nothing to say. I could not identify the man who said he would go along and make the charges."

Edward Klein, a witness for defendant, said he heard defendant McDonald say he would prefer peace disturbance charges against plaintiff.

Eugene A. Donzelot, another witness for defendant, testified that when plaintiff refused to leave the meeting defendant McDonald jumped to his feet and pointed to the back door and said, "Call that officer. I will prefer peace disturbance charges against that man."

At the conclusion of the evidence, the court submitted the issue of liability for actual damages by instructions 2 and 3, requested by plaintiff, which are as follows:

"No. 2.

"The Court instructs the jury that if you find from the evidence in this case that on or about the 12th day of September, 1932, plaintiff Charles Engelbrecht was required by the defendants, or one or more of them, to accompany a Metropolitan policeman to a police station in the City of St. Louis, then the Court instructs you that such act constituted an arrest, and if you so find, your verdict will be for the plaintiff.

"No. 3.

"The Court instructs the jury that the only issue in this case is whether or not defendants, or any one or more of them, either caused, aided, abetted or procured the arrest of plaintiff, provided you find he was arrested, and if you find from the evidence that any one or more defendants did cause, aid, procure or abet said arrest, if you find plaintiff was arrested, your verdict will be against such defendant or defendants as you shall find did cause, aid, procure, or abet said arrest."

The trial court thereafter sustained defendant's motion for new trial, assigning as grounds for its action error in giving the foregoing instructions, which instructions directed a verdict for plaintiff if defendant caused or instigated the arrest, without requiring a finding that the arrest was wrongful or unlawful as alleged in plaintiff's petition. From the order sustaining the motion for new trial plaintiff has appealed.

We are of the opinion that the court properly sustained the motion for new trial. The constituent elements of false imprisonment are: first, the detention or restraint; and, second, the unlawfulness

of the detention or restraint. [Wehmeyer v. Mulvihill, 150 Mo. App. 197, 130 S. W. 681; Burton v. Drennan, 332 Mo. 512, 58 S. W. (2d) 740.]

Ordinarily, a plaintiff who sues for damages for false imprisonment makes out a *prima facie* case by proving that defendant caused his arrest without a warrant; Hanser v. Bieber, 271 Mo. 326, 197 S. W. 68; Thompson v. Buchholz, 107 Mo. App. 121, 81 S. W. 490; for, in such a case, nothing more appearing, the law presumes that the arrest was unlawful, and the burden then shifts to the defendant to justify the arrest, and in such a case the facts in justification must be pleaded before a contested issue of unlawfulness or wrongfulness is presented. [Pandjiris v. Hartman, 196 Mo. 539, 94 S. W. 270; Vaughn v. Hines, 206 Mo. App. 425, 230 S. W. 379; Hanser v. Bieber, 271 Mo. 326, 197 S. W. 68; Thompson v. Buchholz, 107 Mo. App. 121, 81 S. W. 490; Harris v. Railroad Ass'n, 203 Mo. App. 324, 218 S. W. 686; Peterson v. Fleming (Mo. App.), 297 S. W. 163.]

If plaintiff in the case at bar had relied solely upon the presumption by showing an arrest without a warrant, it would not have been error for the court in its instructions to have assumed that the arrest was unlawful, for defendant entered no plea of justification. It is not error for an instruction to assume a fact over which there is no real dispute. [Hanser v. Lorner (Mo. App.), 153 S. W. (2d) 806; Davidson v. St. Louis Transit Co., 211 Mo. 320, 109 S. W. 583; Morris v. Equitable Assur. Soc. of U. S., 340 Mo. 709, 102 S. W. (2d) 569; Hill v. St. Louis Public Service Co. (Mo.), 64 S. W. (2d) 633; Midwest National Bank & Trust Co. v. Davis, 288 Mo. 563, 233 S. W. 406.] But, plaintiff was not content to rely merely upon that presumption. He offered evidence of the facts and circumstances surrounding his arrest, from which facts the jury would have been justified in finding that he was guilty of the offense of disturbing a public meeting. [Sec. 4637, R. S. Mo. 1939.] In such a situation the case should be submitted to the jury on the facts in evidence. Where plaintiff's own evidence, even though it appear that no warrant was issued, tends to show him to have been guilty of an offense against the criminal laws, we think it error for the court to thus ignore such evidence and to submit the case without requiring a finding that the arrest was unlawful or wrongful, even though defendant pleads only a general denial. For, how can the court presume from plaintiff's evidence that the arrest was unlawful when plaintiff's evidence, taken as a whole, is such that the jury could infer that plaintiff was guilty of a criminal offense and that he was properly taken into custody? We cannot see how an instruction which ignores this essential element of plaintiff's case can be said to be proper.

Appellant cites a number of cases, which, without careful consideration, lend force to his argument. The case most strongly relied upon, and which might properly be said to be the leading case on the question, is Pandjiri v. Hartman, 196 Mo. 539, 94 S. W. 270. An

examination of that case discloses that the plaintiff there relied solely upon the presumption, and that the evidence adduced by him not only showed that the arrest was made without a warrant, but also tended to show that plaintiff had not committed any offense known to the law. A more provoked and uncalled for abuse of legal authority could scarcely be conceived of than was disclosed by the evidence in that case. The same situation exists with respect to Thompson v. Buchholz, 107 Mo. App. 121, 81 S. W. 490, and with respect to Vaughn v. Hines, 206 Mo. App. 425, 230 S. W. 379.

Hanser v. Bieber, 271 Mo. 326, 197 S. W. 68, also cited by appellant, involved the question of whether an instruction in the nature of a demurrer to the evidence should have been sustained. The question here involved was not at issue. Nor was the question here under consideration involved in Harris v. Terminal Railroad Assn., 203 Mo. App. 324, 218 S. W. 686, nor in Peterson v. Fleming (Mo. App.), 297 S. W. 163.

While the cases cited and relied upon by appellant use language which at first blush seems to sustain appellant's contention, when analyzed the cases are not controlling. It is a well established rule of law that language in opinions of courts must be read and interpreted with reference to the facts and issues involved therein. [Keeton v. Gaiser, 331 Mo. 499, 55 S. W. (2d) 302; Powers v. Kansas City Public Service Co., 334 Mo. 432, 66 S. W. (2d) 840; State ex rel. Woodmansee v. Ridge, 343 Mo. 702, 123 S. W. (2d) 20.]

In all of the cases cited and relied upon by appellant herein, the plaintiffs offered no evidence to contradict the inference from the basic fact, but relied upon the presumption in proving that the arrests were unlawful. This presumtion is a procedural one which disappears when the evidence discloses the facts. [Mockowik v. Kansas City, St. J. & C. B. R. Co., 106 Mo. 550, 94 S. W. 256.] It is only allowed because a rational connection exists between what is proved, i.e., arrest without warrant, and what is inferred—unlawfulness. If, however, plaintiff's own evidence tends to disprove the ultimate fact, plaintiff should not be allowed to brush aside this evidence and stand only on the presumption. In fairness to all concerned, therefore, no presumption should arise, and the existence or non-existence of the presumed fact should be determined exactly as if no presumption had ever been applicable. The case should be open as to the issue, and free from any presumption. The basic fact, which ordinarily gives rise to the presumption, should assume merely the character of evidence to be submitted to the jury along with the other evidence.

Since in the case at bar plaintiff's own evidence tended to show that his arrest was lawful, we must hold that it was error for the court to give plaintiff's Instruction No. 1 and plaintiff's Instruction No. 2, which assumed a necessary element of plaintiff's case, i.e., that the arrest was unlawful.

The action of the trial court in sustaining defendant's motion for new trial is affirmed, and the cause is remanded. *Hughes, P. J.,* and *McCullen, J.,* concur.